UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

13 MISC 0202

In re Application of

OTKRITIE INTERNATIONAL
INVESTMENT MANAGEMENT LIMITED,
a company incorporated in the British Virgin
Islands,

OTKRITIE SECURITIES LIMITED,
a company incorporated in England and Wales,
and

OTKRITIE FINANCIAL CORPORATION JSC,
a company incorporated in the Russian Federation,

To Issue Subpoenas for the Production of
Documents and Testimony for Use in a Foreign
Proceeding.

Civil Action No. 13-MC-



## EIGHTH APPLICATION FOR AN ORDER UNDER 28 U.S.C. § 1782
## TO ISSUE SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS AND
## TESTIMONY FOR USE IN A FOREIGN PROCEEDING

Petitioners Otkritie International Investment Management Limited, Otkritie Securities

Limited ("OSL"), and Otkritie Financial Corporation JSC (collectively, "Applicants"), by and

through undersigned counsel, hereby apply pursuant to 28 U.S.C. § 1782 ("Section 1782") for an

order authorizing undersigned counsel to issue subpoenas for documents and testimony to RBS

Securities Inc. (hereinafter, "RBS US" or "Respondent") in aid of a foreign proceeding.

1.      This Application for judicial assistance follows seven previously-granted Section

1782 applications, filed on January 4, February 21, April 13, May 24, August 6, November 13,

and November 19, 2012, respectively. *See In re Application of Otkritie Int'l Invest. Mgmt. Ltd.*

*et al. to Issue Subpoenas for the Production of Documents for Use in a Foreign Proceeding*, at

DE 9, 13,  No. 12-MC-1 (S.D.N.Y. 2012); *In re Application of Otkritie*, at DE  8, No. 12-MC-

1

118 (S.D.N.Y. 2012); *In re Application of Otkritie*, at DE 1, No. 12-MC-177 (S.D.N.Y. 2012); *In re Application of Otkritie*, at DE 8, No. 12-MC-262 (S.D.N.Y 2012); *In re Application of Otkritie*, at DE 5, No. 12-MC-374 (S.D.N.Y 2012); *In re Application of Otkritie*, at DE 13, No. 12-MC-382 (S.D.N.Y. 2012).

2.      For the Court's convenience, certain representations made in connection with previous Section 1782 applications have been reproduced herein, and in the accompanying Declaration of Michael C. Miller with exhibits ("Miller Declaration").  However, to avoid inundating the Court with aspects of earlier discovery efforts beyond the scope of the present request, some facts recited in previous applications have not been repeated.

3.      Applicants are plaintiffs in a civil fraud action currently pending in the High Court of Justice, Queen's Bench Division, in the United Kingdom, which is captioned *Otkritie International Investment Management Ltd., et al. v. Urumov, et al.*, 2011 Folio 1182 (hereinafter, "the U.K. Action").

4.      In the U.K. Action, Applicants assert claims against a former London-based OSL employee,  Georgy Urumov ("Urumov"), Urumov's wife Yulia Balk, shell companies owned and controlled by Urumov and other individuals and entities acting in concert with Urumov, including, among others, Otkritie employees Ruslan Pinaev ("Pinaev"), Sergey Kondratyuk, Yevgueni Jemai, and Vladimir Gersamia of Threadneedle Asset Management U.K., for, *inter alia*, breach of fiduciary duty, breach of contract, deceit, conspiracy, accounting, tracing, and restitution.

5.      The U.K. Action and these proceedings are brought to help Applicants recoup an estimated $183 million in funds misappropriated by Urumov and several individuals working in concert with him.

2

6.      In relevant part, Applicants allege in the U.K. Action that Urumov, Pinaev, and their co-conspirators were the masterminds behind and beneficiaries of a complex fraud perpetrated on OSL involving Argentinean GDP-linked subscription bonds (hereinafter, "the Argentinean Warrants" or "Warrants").  Specifically, Applicants claim that by manipulating the Argentine peso/U.S. dollar exchange rate in a series of transactions in March 2011 to which OSL was a party, and by making false representations about the existence of a riskless forward sale involving the Warrants, Urumov and Pinaev caused OSL to overpay for the Warrants by some $160 million, and diverted the overpayment to themselves and their co-conspirators (the "Second Argentinean Warrants Transaction" or the "Warrants Fraud").

7.      Upon its review of Applicants' evidence and Urumov's defenses, the court overseeing the U.K. Action issued orders freezing up to $183 million in assets owned or controlled by Urumov, his wife, two of their offshore entities, and a number of additional defendants.  This amount relates to both the Warrants Fraud and a separate fraud involving Urumov, which is not the subject of this Application.

8.      The primary goal of the First, Second, Third, Fourth, and Sixth applications was to trace the dissipation of misappropriated funds in support of the U.K. Action and Applicants' worldwide asset freezing efforts.  To that end, Applicants sought primarily transactional records from banks located in the District and suspected to have unwittingly facilitated the Warrants Fraud.

9.      The Fifth Application sought from Newedge USA ("Newedge"), a brokerage headquartered in the Southern District, documents and testimony concerning a contemplated sale of the Warrants from Otkritie to Threadneedle Asset Management U.K. ("Threadneedle"), that, if consummated, may have enabled the Co-Conspirators to avoid detection.

3

10.     The Seventh Application had a slightly different focus than the previous six. Targeting BGC Financial, L.P. ("BGC Financial"), a U.S. broker-dealer known to have been involved in accumulating the Warrants for the Co-Conspirators, the Seventh Application aimed to resolve outstanding questions about the ultimate source for the Warrants used to defraud Applicants and the extent of BGC Financial's knowledge concerning the fraudulent scheme.

11.     This Eighth Application follows the same blueprint as the Seventh.

12.     Through a special U.K. discovery proceeding commenced against U.K.-based Royal Bank of Scotland plc (hereinafter, "RBS UK" and the "RBS UK Proceeding") earlier this year, Applicants have learned that the Respondent, RBS US, provided RBS UK with at least 250 million Warrants later sold to the Co-Conspirators and used in the Warrants Fraud. With this Application, Applicants seek to know more about the Respondent's Warrant trading activities and its relationship with RBS UK and the Co-Conspirators.

13.     In particular, Applicants seek to obtain from the Respondent a schedule of all trades in the Argentinean Warrants to which it was a party from January to March 2011, all communications relating to the same, and testimony explaining, *inter alia,* the relationship between RBS US, RBS UK, and the Co-Conspirators. Applicants believe that such information and testimony will, at a minimum, provide evidence in support of the Co-Conspirators' liability, and might reveal still unknown aiders and abettors, including persons and entities who furnished the Warrants used in the fraud.

14.     Applicants' specific requests for documents and testimony are outlined in detail in the Subpoenas annexed as Exhibits 1 and 2 to the accompanying Miller Declaration.

15.     The requirements of §1782 are met by Otkritie's Application. *First,* the Respondent is found in this district. RBS US is a Financial Industry Regulatory Authority

4

("FINRA")-registered broker-dealer regulated by the New York State Department of Financial Services.  RBS's website indicates that RBS US has offices at 101 Park Avenue, New York, New York, NY  10178, but we understand that RBS US has recently relocated to 340 Madison Avenue, also within the District.

16.     *Second*, the discovery sought is intended for use in a "foreign proceeding," as it is calculated to support Applicants' claims in the U.K. Action.

17.     *Third*, as litigants in the U.K. Action, Applicants are "interested persons" within the meaning of § 1782.

18.     Furthermore, the discretionary factors outlined by the United States Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.,*  542 U.S. 214, 249 (2004), support a grant of this Application.

19.     Neither the Respondent nor its U.K. affiliate, RBS UK, is a participant in the U.K. Action.  Moreover, the discovery sought concerns trading in the Argentinean Warrants involving the Discovery Respondent, who is located in New York and not subject to the U.K. court's jurisdiction.

20.     The United Kingdom has been historically receptive to Section 1782 assistance from federal courts, and federal courts have deemed the U.K. courts an appropriate subject of comity and judicial assistance.  *See, e.g.*, *In re Application of Guy*, 2004 WL 1857580, at *2 (S.D.N.Y. Aug. 19, 2004) (granting English administrators of a decedent's estate access to US discovery).

21.     This Application is brought in a good faith effort to gather intelligence regarding the Co-Conspirators' aggregation of Warrants in the lead up to the Warrants Fraud and, in so doing, to further establish the co-conspirators' liability.

Doc. # DC-8190347 v.1 6/10/13 05:24 PM

22.     Applicants' discovery requests are also narrowly-tailored to obtain probative information kept in the ordinary course of business.  They are not unduly intrusive or burdensome.

23.     Contemporaneous with this filing, Applicants, by their undersigned counsel, are copying General Counsel for the Respondent, at both RBS US's New York City and Stamford, Connecticut offices.

24.      For reasons set forth in the accompanying papers, as in Applicants' prior applications, Applicants do not believe that notice to Urumov or his co-conspirators is required. In sworn statements made by Urumov in connection with the U.K. Action, Urumov expressly disavows any knowledge of, or involvement in, the Warrants Fraud.  Urumov maintains he was absent on medical leave when the Second Argentinean Warrants Transaction that is the subject of this Application was being consummated and knows nothing whatsoever about the reasoning behind it.  Accordingly, by Urumov's own admission, Urumov does not have any vested interest in the outcome of these third-party proceedings.

25.     Applicants also oppose giving notice of these proceedings to Urumov, his Co-Conspirators, and entities they control.  Applicants believe, based upon recent experience, that if given the opportunity, they are likely to interfere with these proceedings and to attempt to further conceal misappropriated funds.

26.     In the U.K. Action, when ordered by the court to disclose the full extent of his assets, Urumov failed to identify several companies he owned or otherwise controlled, including Dunant International SA ("Dunant"), which was later discovered to have transferred funds in breach of the U.K. court's October 5 Freezing Order.  Moreover, Urumov, failed to disclose that his wife had acquired a property in the U.K., in Dunant's name, for $32 million.

6

WHEREFORE, for the foregoing reasons and those set out in the accompanying submission, Applicants respectfully request that this Court enter an eighth order granting their request for discovery pursuant to 28 U.S.C. §1782 and authorizing the issuance of the subpoenas annexed hereto as Exhibits 1 and 2 of the Miller Declaration to RBS US.

Respectfully submitted,

Dated: New York, New York
      June 11, 2013

By: _____
Michael C. Miller
Evan Glassman
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
Tel: (212) 506-3900
Fax: (212) 506-3950
*Attorneys for Applicants*

7